ORDERED.

**Dated:  November 21, 2016**

*[Signature]*
Michael G. Williamson
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:  Case No. 8:14-bk-02490-MGW
 Chapter 7
Donald R. Geiger,

 Debtor.
_____/

# FINDINGS OF FACT AND
# CONCLUSIONS OF LAW ON HOMESTEAD EXEMPTION

In order for real estate to qualify for the Florida homestead exemption,[1] a debtor must possess the intent to make the property a permanent homestead, and must couple that stated intention with evidence that even if the property is uninhabitable (as is the case here), the property is capable of occupancy and that the debtor has taken steps to make the property habitable for occupancy as a permanent homestead. In this case, the Debtor took title to the subject property over ten years ago, was not residing there at the time of his bankruptcy filing, and has only lived in

---

[1] Art. X, § 4, Florida Constitution.

the house a total of ten days because the property is uninhabitable. Given these circumstances, the property does not qualify under the Florida homestead exemption. Accordingly, the Debtor's motion to avoid C1 Bank's judicial lien on the property based on his claim of homestead will be denied.

## Findings of Fact[2]

Dating back to the late 1800s, the Debtor's family has owned several parcels of land on Eunice Drive in Zephyrhills, Florida.[3] From 1986 until 1990, the Debtor lived on one parcel located at 36415 Eunice Drive, the property he now claims as his exempt homestead. At that time, the property was owned by his grandmother. In 1990, the Debtor married his wife, Connie, and moved to an adjacent parcel located at 36343 Eunice Drive. The Debtor lived with his wife at 36343 Eunice Drive for more than 20 years, from 1990 until mid-2012.

Sometime in 2005, while the Debtor was living at 36343 Eunice Drive, the Debtor's grandmother put his name on the title to the 36415 Eunice Drive property, apparently because she was in poor health. In 2006 or 2007, the Debtor's grandmother passed away, and he took title to the 36415 Eunice Drive Property. When the Debtor and his wife began having marital problems in 2012, the Debtor moved out of the marital home at 36343 Eunice Drive and into an apartment briefly,

---

[2] The Court's findings of fact are based on the Debtor's testimony at a July 15, 2015 final evidentiary hearing on his motion to avoid C1 Bank's judicial lien. At the July 15 final evidentiary hearing, the Court also received into evidence Debtor's Exhibits 1 and 2, as well as C1 Bank's Exhibits 1 – 3.

[3] Debtor's Ex. 1.

before ultimately moving into a double-wide trailer on the 36415 Eunice Drive property.

His time at the 36415 Eunice Drive property, however, was short to say the least. According to the Debtor, he intended to make the 36415 Eunice Drive property his permanent home. But the property was unlivable.[4] There were holes in the roof and mold throughout the trailer.[5] So after ten days at the property, the Debtor moved back into the marital home located at 36343 Eunice Drive.

As it turns out, the Debtor's ex-wife had been awarded the marital home as part of the couple's divorce, but she later moved into an apartment in Wesley Chapel so her son could be in a desired school zone. Because the Debtor's ex-wife was not living in the marital home, she offered to let the Debtor live there while he worked to fix up the 36415 Eunice Drive property. Over the years, the Debtor has sprayed some mold killer at the property and purchased some supplies to repair the trailer.[6] But the Debtor continues to live at the former marital home because the 36415 Eunice property remains unlivable to this day.[7]

In March 2014, the Debtor filed for chapter 7 bankruptcy. Although he was living at the former marital home at the time he filed for bankruptcy, he listed the

---

[4] Debtor's Composite Ex. 2.

[5] *Id.*

[6] *Id.*

[7] *Id.*

36415 Eunice Drive property as his address and claimed it as exempt homestead on schedule C.[8] The Debtor later moved to avoid an $84,935.31 judgment lien C1 Bank had obtained against him.[9] The Court held a final evidentiary hearing on the Debtor's motion to avoid C1 Bank's judicial lien because it is impairing his homestead exemption.

## Conclusions of Law

Florida's homestead exemption, set forth in Article X, Section 4 of the Florida Constitution, protects a debtor's homestead from forced sale.[10] "The homestead character of a property 'depends upon an actual intention to reside thereon as a permanent place of residence, coupled with the fact of residence.'"[11] So to be eligible for the homestead exemption, the Debtor must actually live at the 36415 Eunice Drive property and intend to make it his permanent residence.[12]

It is not clear that the Debtor has the actual intent to make the 36415 Eunice Drive property his permanent homestead. To be sure, the Debtor testified that he intended to make the property his home when he moved in for ten days back in 2012

---

[8] Doc. No. 1.

[9] Doc. No. 23.

[10] Art. X, §4, Fla. Const.

[11] *In re Bennett*, 395 B.R. 781, 789 (Bankr. M.D. Fla. 2008) (quoting *Hillsborough Inv. Co. v. Wilcox*, 13 So. 2d 448, 452 (Fla. 1943)); *see also Orange Brevard Plumbing & Heating Co. v. La Croix*, 137 So. 2d 201 (Fla. 1962) (holding that "intent *alone* is not a sufficient basis for the establishment of a homestead") (emphasis added).

[12] *In re Harle*, 422 B.R. 310, 313-14 (Bankr. M.D. Fla. 2010).

and that he intends to move back once it is livable. But when it comes to subjective intent, which is naturally difficult to ascertain, actions speak louder—or at least as loudly—as words:

> The intention of a person is a difficult matter to establish, and can only reliably be shown by *circumstances and acts in support of expressions of intention.*[13]

The circumstances of this case are inconsistent with the Debtor's stated intent. It is true that the Debtor filed a notice of homestead in October 2012, not long after he stayed at the property for ten days. And he has maintained electric and water at the 36415 Eunice Drive property. Significantly, however, the Debtor has not claimed the homestead exemption for ad valorem tax purposes.[14] "The status of property as homestead for ad valorem tax exemption purposes is persuasive as to a debtor's intent."[15] Nor does it appear the Debtor uses 36415 Eunice Drive as his mailing address. For instance, he uses a P.O. Box for his mailing address with the Pasco County Tax Collector. Likewise, his driver's license contains an address other than 36415 Eunice Drive. Where, like here, an "owner acts inconsistently with a self-professed intention to establish a homestead, a claim for exemption may fail."[16]

---

[13] *Semple v. Semple*, 89 So. 638, 639 (Fla. 1921) (emphasis added).

[14] C1 Bank's Trial Ex. 2.

[15] *In re McClain*, 281 B.R. 769, 773-74 (Bankr. M.D. Fla. 2002).

[16] *In re Bratty*, 202 B.R. 1008, 1010 (Bankr. S.D. Fla. 1996) (citing *Smith v. Hamilton*, 428 So. 2d 382 (Fla. 4th DCA 1983)).

But even assuming the Court does credit the Debtor's testimony that he intends to make the 36415 Eunice Drive property his homestead, the evidence at trial was undisputed that he was not actually living there as of the petition date. In fact, in the last decade the Debtor has owned the property, he has only lived there for ten days. The last time the Debtor resided at the property was mid-2012, nearly two years before the petition date, and he has not returned since then.

At trial, the Debtor put on a compelling case that he cannot live at the 36415 Eunice Drive property because it is unlivable. In particular, the Debtor testified that mold is rampant in the trailer on the property. The Debtor also testified that there is a hole in the roof, which has allowed rodents to enter. The pictures the Debtor offered into evidence at trial[17] certainly support his claim that the property is unlivable.

The problem, from the Debtor's perspective, is that the more persuasive he is that the property is unlivable, the more his homestead claim is doomed. That is because more than 130 years ago, the Florida Supreme Court, in *Drucker v. Rosenstein*, explained that "a lot never occupied as a dwelling place, *and incapable of such occupancy*, is not homestead within the Constitution."[18] The Florida Supreme Court applied that rule in the January 1882 term in *Solary v. Hewlett*,[19] which is nearly identical to this case.

---

[17] Debtor's Composite Ex. 2.

[18] 19 Fla. 191, 195-96 (Fla. 1882) (emphasis added).

[19] 18 Fla. 756 (Fla. 1882).

In *Hewlett*, a creditor obtained a judgment against Hewlett and then attempted to levy on property he had purchased in Jacksonville, Florida.[20] Hewlett intended to make the property his home at the time he purchased it. But it was not in suitable condition for him, his wife, and their four children.[21] So Hewlett and his family lived elsewhere on property owned by his wife while Hewlett saved up money from his job as a day laborer to repair the property. On those facts, the Florida Supreme Court reversed a trial court order declaring the property Hewlett's homestead:

> In this case, there is no evidence, save the allegation in the answer, that [Hewlett] intended to repair and reside on the premises. He had taken no steps, had done no act to impress it with the character of a homestead, although he owned it several months before contracting the debt, upon which the judgment was founded. His intention cannot avail him under these circumstances.[22]

Only one fact distinguishes this case from *Hewlett*. In *Hewlett*, the homeowner never resided at the claimed homestead. Here, the Debtor spent ten days at the 36415 Eunice Drive property. But that fact does not warrant a different outcome than in *Hewlett*.[23]

---

[20] *Id.* at 757.

[21] *Id.* at 758.

[22] *Id.* at 760.

[23] Arguably, there is one other distinguishing fact. In *Hewlett*, the homeowner failed to allege he had undertaken any repairs to make the claimed homestead livable. Here, by contrast, the Debtor ripped up the carpet, sprayed some mold killer, and purchased some minimal supplies to repair the property. Those minimal steps, taken over a three-year period, do not make this case meaningfully different from *Hewlett*.

The Court, like the Debtor, is unable to locate any authority setting a minimum occupancy in order to establish the homestead exemption; nonetheless, the Court concludes that the Debtor's ten-day "occupancy" here—if it can be called that—is not sufficient. During the decade he has owned the property, the Debtor has occupied the 36415 Eunice Drive property for (at most) ten days. This is not a case where some catastrophic event rendered the Debtor's property unlivable shortly (or at any point) after he moved in. It was unlivable from the outset.[24] If the Debtor's "occupancy" were enough to establish homestead here, any judgment debtor could overcome the Florida Supreme Court's long line of cases holding that vacant land cannot constitute homestead[25] by simply erecting a ramshackle structure on the property and enduring it for a week or so.

## Conclusion

As the objecting party, C1 Bank has the burden of proving that the Debtor is not entitled to claim the 36415 Eunice Drive property as exempt homestead.[26] Under the undisputed objective facts of this case, C1 Bank has met that burden. By separate order, the Court will deny the Debtor's motion to avoid the judgment lien of C1 Bank.

---

[24] The Court is aware, from testimony elicited at trial, that a renter had been living at the 36415 Eunice Drive property at some point before the Debtor moved in for ten days. This fact does not change the Court's analysis. To the extent it belies the point that the property was unlivable when the Debtor moved it, it would likewise defeat the Debtor's claim that he intends to make the property his permanent residence but is prevented from doing so by its state of disrepair.

[25] *See, e.g., Drucker v. Rosenstein*, 19 Fla. 191, 194 (Fla. 1882).

[26] *In re Alexander*, 346 B.R. 546, 549 (Bankr. M.D. Fla. 2006).

> Attorney Ryan L. Snyder is directed to serve a copy of these Findings of Fact and Conclusions of Law on interested parties who are non-CM/ECF users and file a proof of service within 3 days.

Ryan L. Snyder, Esq.
Snyder Law Group, P.A.
*Counsel for C1 Bank*

Robert C. Burnette, Esq.
*Counsel for Debtor*